UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

DAVIDSON SURFACE/AIR, INC.,      )
                                 )
            Plaintiff,           )
                                 )
    v.                           )        No. 4:22 CV 547 CDP
                                 )
ZURICH AMERICAN INSURANCE        )
COMPANY, d/b/a Zurich,           )
                                 )
            Defendant.           )

## MEMORANDUM AND ORDER

This case arises out of defendant Zurich American Insurance Company's

failure to provide insurance coverage to its insured, plaintiff Davidson Surface/Air,

Inc., on Davidson's claim of property damage to its commercial building,

specifically hail damage to its roof and water damage to its interior office space.

Davidson brings this action in diversity seeking a declaratory judgment that Zurich

must provide coverage under the policy for loss and damage to its property.

Davidson also seeks nearly $10 million in damages for breach of contract; additional

statutory damages for vexatious refusal to pay; and attorney's fees, costs, and

interest.   The case is set for jury trial beginning June 17, 2024.   Zurich now moves

to exclude the opinion testimony of three of Davidson's expert witnesses at trial.

For the reasons that follow, I will deny the motions in part and grant them in part.

## I.  Background[1]

A hail-producing thunderstorm moved through the St. Charles County/St. Louis County area during the overnight/early morning hours of March 27, 2020. Davidson's commercial property was in the vicinity of the storm.   Also sometime in March or April 2020, Jerry Berhorst, a contracting consultant, observed water around a skylight on the second floor of the building, with staining on the ceiling and carpet.[2]   He noticed signs of repair around the skylight.   When Berhorst returned in December 2020, he saw extensive water damage throughout the building that involved ceiling tiles, carpet, and walls.   His brief inspection of the roof at that time showed what he considered to be hail damage.   From follow-up inspections, Berhorst concluded that the water damage to the interior of the building was caused by water penetrating the hail-damaged roof.   Dr. Ildefonso Gonzalez, a design engineer, reached the same conclusion.

Davidson made a claim to Zurich under its commercial property insurance policy for weather-related loss and damage to the property.   Zurich failed to provide coverage and continues to refuse coverage.

Zurich has now moved under Federal Rule of Evidence 702 to exclude from

---

[1] The following background is taken from the evidence and assertions presented by the parties on Zurich's motions to exclude expert testimony.   My summary here is for the purpose of ruling those motions only and shall not be construed as findings of fact or judicial notice of any matter. The parties continue to bear the burden of presenting facts at trial without regard or reference to this summary.

[2] Berhorst was at the building at that time regarding a future planned demolition project.   His visit was not related to the storm or the damage alleged in this action.

trial the opinions and testimony of three of Davidson's experts:   Dr. Neil Fox, a professor of meteorology; Jerry Berhorst, the contracting consultant described above; and Dr. Gonzalez, the design engineer mentioned above.   For the reasons that follow, I will permit Dr. Fox to testify to the hail-producing storm conditions during the relevant time and in the relevant area, but he cannot testify to his opinion that two-inch hail actually struck Davidson's building.   I will exclude Berhorst's expert opinions *in toto* because they are not reliable.   Berhorst may testify as a fact witness, however, and he may give opinions that meet the requirements of Federal Rule of Evidence 701.   Finally, I will not permit Dr. Gonzalez to testify as an expert on matters of meteorology.   All other of his opinion evidence and testimony will be permitted.

## II.   Legal Standard

The admission of expert testimony is governed by Rule 702, Federal Rules of Evidence, which provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if the proponent demonstrates to the court that it is more likely than not that:
>
> a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or determine a fact in issue;
>
> b) the testimony is based upon sufficient facts or data;
>
> c) the testimony is the product of reliable principles and methods; and

   d) the expert's opinion reflects a reliable application of the
   principles and methods to the facts of the case.

Fed. R. Evid. 702 (amended Dec. 1, 2023)[3]; *see also David E. Watson, P.C. v.*

*United States*, 668 F.3d 1008, 1015 (8th Cir. 2012).   The proponent of expert

opinion and testimony, here Davidson, must satisfy each criterion of Rule 702 by a

preponderance of the evidence.

   The purpose of a motion to exclude expert testimony is to ensure that only

reliable and relevant expert testimony is presented to a jury.   *Russell v. Whirlpool*

*Corp.,* 702 F.3d 450, 456 (8th Cir. 2012).   While a party's mere disagreement with

an expert's assumptions and methodologies does not warrant exclusion, *David E.*

*Watson*, 668 F.3d at 1015, I must nevertheless be satisfied that the expert has a

sufficient basis for his opinion and that he reliably applied the methodology to the

facts of the case.   Fed. R. Evid. 702 advisory committee's note (1) to 2023

amendment.   *See also Webb v. City of Maplewood*, No. 4:16CV1703 CDP, 2021

WL 5371247, at *2 (E.D. Mo. Nov. 18, 2021) (an otherwise qualified expert may not

simply offer conclusory opinions without providing a basis for the conclusions).

"[E]ach expert opinion must stay within the bounds of what can be concluded from a

---

[3] The purpose of the December 2023 amendments was to clarify that the proponent of expert testimony must meet all of Rule 702's substantive standards for admissibility by a preponderance of evidence and, further, to correct prior, inaccurate applications of Rule 702 given that "many courts have [incorrectly] held that the critical questions of the sufficiency of an expert's basis, and the application of the expert's methodology, are questions of weight and not admissibility."   Fed. R. Evid. 702 advisory committee's note (1) to 2023 amendment.

reliable application of the expert's basis and methodology." Fed. R. Evid. 702 advisory committee's note (2) to 2023 amendment. If the expert's opinion is so fundamentally unsupported that it can offer no assistance to the jury, it must be excluded. *Bonner v. ISP Tech., Inc.*, 259 F.3d 924, 929-30 (8th Cir. 2001).

I have broad discretion in determining whether expert testimony should be allowed, *Russell,* 702 F.3d at 456, and I should resolve doubts regarding the usefulness of an expert's testimony in favor of admissibility. *Masters v. City of Independence, Mo.*, 998 F.3d 827, 838 (8th Cir. 2021); *Marmo v. Tyson Fresh Meats, Inc.*, 457 F.3d 748, 758 (8th Cir. 2006). An expert's opinion need not be proven correct nor resolve an ultimate issue of fact in order to be admissible. *Bonner,* 259 F.3d at 929; Fed. R. Evid. 702 advisory committee note (1) to 2023 amendment. But it cannot be speculative, unsupported by sufficient facts, or contrary to the facts of the case. *Masters*, 998 F.3d at 838.

Against this backdrop, I turn to Zurich's motions to exclude Davidson's proffered experts.

### III.   Discussion

A.   <u>Motion to Exclude Dr. Fox</u> (ECF 50)

Dr. Fox is a Professor of Atmospheric Science in the School of Natural Resources at the University of Missouri. His twenty years of teaching experience includes undergraduate classes in Radar Meteorology, Mesoscale Meteorology and Dynamics, and Physical Meteorology, as well as graduate courses in Advance Radar

Meteorology, Rain, and Precipitation.   Topics in those courses include the formation and properties of hail, rain, and snow; how all types of atmospheric precipitation is formed and develops; and advanced techniques of observing and assessing quantities and sizes of precipitation using radar and other instrumentation. Dr. Fox has a bachelor's degree in Physics, a master's degree in Meteorology, and a doctorate in Atmospheric Science.   He has published more than 60 peer-reviewed scientific journal papers and has been a principal investigator on federally funded projects that examined, *inter alia*, radar-based short-term storm forecasts, convective storm characteristics in the Midwest, and improving radar observations of storms.   He currently operates the University of Missouri gap-filling dual-polarization Doppler radar.   Before this case, he has never served as an expert witness.

Davidson secured Dr. Fox's expert report and testimony to provide opinions on whether a storm passed over Davidson's commercial building on March 27, 2020; whether that storm produced hail, and, if so, what size; and whether hail of a particular size actually fell on Davidson's building.   In his report, Dr. Fox opined that 1) Zurich's representation that there was no hailstorm striking the building on March 27, 2020, is not supported by the data because radar data showed hail two-inches in diameter in the area; 2) Zurich's representation that hail size in the storm was less than three-quarters of an inch is not supported by the data because storm watchers reported hail measuring up to one-and-one-half inches in diameter,

and the storm did not decrease in intensity as it tracked over the building; and 3) a storm passed over the building on March 27, 2020, and produced two-inch- diameter hail that struck the building.   Zurich seeks to exclude Dr. Fox's opinions, arguing that he is not qualified to render the proffered opinions and, further, that his opinions are not based on scientific data and are contrary to the facts and data in the case.

After reviewing the materials submitted by the parties, I find that Dr. Fox has the requisite knowledge, training, and expertise to render opinions that a hail-producing storm passed over Davidson's building on March 27, 2020, and that the storm was capable at that time of producing hail two inches in diameter.   Dr. Fox based those opinions on his careful review and analysis of radar data, which is his precise area of expertise; historical knowledge of and professional experience with storm tracking, predictions, and precipitation; and recorded observations of storm watchers.   That methodology is sound and, as to those two opinions, Dr. Fox reliably applied it to the facts of the case.   His opinions are carefully researched, detailed, and relevant and will assist the jury in resolving a factual dispute. Accordingly, Dr. Fox's opinions that a hail-producing storm passed over Davidson's building on March 27, 2020, and that that storm was capable of producing two-inch hail at the time it passed over the building are admissible and will not be excluded.

I cannot say the same for his opinion that two-inch hail *actually* struck the building, however.   Dr. Fox acknowledged that hail can fall and land on one side of a street and not the other.   He acknowledged that he did not have simultaneous data

of hail falling and landing at the specific building site.   He acknowledged that the location of the building was not precisely identified on the radar images he examined but rather was within a marked zone that spanned 100 miles.   While his opinion that a storm capable of producing two-inch hail passed over Davidson's building is based on sufficient facts and data with a tested methodology reliably applied to the facts, there is an insufficient factual basis to support his extrapolated opinion that two-inch hail actually struck the building on March 27, 2020.   I must therefore exclude that speculative opinion.   *See Masters*, 998 F.3d at 838.

I will therefore grant in part and deny in part Zurich's motion to exclude Dr. Fox's expert report, opinions, and testimony in accordance with my determinations set out above.

B.      Motion to Exclude Jerry Berhorst (ECF 52)

Berhorst describes himself as a co-CEO of Amaya FD&R, Inc. and Amaya Contracting, LLC, which are related general contracting firms specializing in custom home building; fence and deck construction; and commercial, industrial, and residential roofing.   He also acts as a liaison on behalf of property owners in processing insurance claims associated with weather-related damage.   Before joining the Amaya companies in 2018, Berhorst worked for eight years as a private consultant specializing in fence and deck construction, commercial and residential roofing, and general contracting.   He has a bachelor's degree in Public Administration and a master's degree in Government Administration.   Before this

case, Berhorst has never testified or been deposed as an expert witness.

Davidson secured Berhorst's expert report and testimony regarding his observations, assessment, and conclusions as to the condition of the roof and for calculating damages.   In his report dated June 30, 2023 (ECF 53-3), Berhorst stated that he observed water damage to the interior of the building in March and December 2020 and briefly inspected the roof in December 2020 at Paul Davidson's request.   Berhorst summarized that he saw significant hail damage to the roof during that brief inspection, which required him to conduct more extensive inspections when he had time.   Those additional inspections occurred in January and February 2021.   Berhorst wrote that during those follow-up inspections, he performed a detailed examination of the roof, took core samples, and obtained more than 100 photographs documenting hail damage.   He observed loss of granular material, significant hard tissue and soft tissue damage, significant splatter marks, and damage to seams – all of which he opined were caused by hail strikes.   He wrote that he also performed a detailed examination of the water-damaged office space and observed no broken water pipes or water infiltration from MEP (mechanical, electrical, and plumbing) systems.   Given his conclusion that the roof sustained hail damage, he opined that the only cause of the interior damage was water penetration through the hail-damaged roof.

Berhorst wrote that the hail damage came from the March 27, 2020, storm and that he based that conclusion on his review of company records, his recollection of

the storm, and a hail report dated April 2021 confirming that a thunderstorm with a potential for two-inch hail struck the building on March 27, 2020.   Berhorst reported that Amaya repaired and performed maintenance on the roof and submitted to Davidson six invoices dated December 2021 to June 2023.   Finally, Berhorst wrote that he has worked with insurance companies on more than 1000 claims involving roof damage and water infiltration and that he acted on behalf of Davidson in working with Zurich on Davidson's insurance claim here.

Berhorst concluded his report by offering nine opinions:

1.      . . . that a hail storm with $2.0 - 2.5$ inch hail struck the building on March 27, 2020, which resulted in roof damage, water infiltration and water damage . . . with interior damage/loss of $3,212,587.80 . . . with the roof damage/loss of $6,753,600.00.

2.      . . . that the interior water damage was not caused by failed seals and flashing around skylights.

3.      . . . that the water infiltration and water damage was caused by hail damage from the March 27, 2020 hail storm.

5.[4]      . . . that the roof was well built, tapers, properly maintained, in a condition consistent with its age and quality, with no workmanship or manufacturing defects.

6.      . . . that the water infiltration was not caused by any defect in material or workmanship of the roof.

7.      . . . that the water infiltration and water damage . . . was caused by the March 27, 2020 hail storm and resulted in interior damage/loss of $3,212,587.80.

8.      . . . that the March 27, 2020 hail storm damaged the roof to the

---

[4] There is no "4." in Berhorst's listed opinions.

extent a full tear off and roof replacement is needed.

9.      . . . that the cost to repair the roof damage caused by the March 27, 2020 hail storm . . . is $6,753,600.00.

10.     . . . that Zurich acted vexatiously, unreasonably and in bad faith in the handling and denial of Davidson's insurance claim.

(Exh. 53-3, Berhorst Rep. at pp. 3-4.)   In a supplemental report dated July 3, 2023,

Berhorst offered additional opinions:

1.      . . . that the roof was sufficiently serviced and maintained, had no defects in material or workmanship, and that other than the damage to the roof caused by the March 27, 2020 hail storm, any other defects to the roof were normal wear and tear and not the cause of any roof damage or water damage.

2.      I am familiar with the hail standards from HAAG Engineering along with insurance industry standards concerning hail damage and roof repair/replacement, which relies on looking at a 10 x 10 area for at least 8 hail strikes from hail size over 1.5 inches, and when I inspected the roof in 2021 I observed several areas where there were more than 8 hail strikes in a 10 x 10 area, thereby warranting the roof be replaced.

3.      . . . that the March 27, 2020 hail storm was a fortuitous event with hail that caused direct physical damage to the roof and the damage to the roof and the water damage was not an expected, preventable or accumulated loss, was not from wear and tear, was not from corrosion, decay, deterioration, hidden or latent defect, or any quality of the property that causes it to damage or destroy itself.

4.      The interior water damage I observed in December 2020 did not change in character and was identical at the time the water damage was documented and mapped in 2021 by me, Crawford, and Young & Associates.

(ECF 53-4.)

Zurich contends that Berhorst is not qualified to offer expert testimony under

Rule 702 in this case because he has no experience in roof construction other than soliciting business and securing subcontractors to perform the work; he has no experience in personally determining whether and/or when a roof needs to be replaced and relies on engineers and consultants for such information; he is not a licensed contractor nor personally holds any relevant roofing certifications; and his admitted expertise is in TPO roofing systems, whereas the roofing system at issue in this case is a modified bitumen (mod-bit) roof. Zurich also contends that Berhorst's opinions are unreliable because they are not based on sufficient facts or data, and they are not the product of any analytical process or the application of reliable methodology.

The question of Berhorst's qualifications to render expert opinions in this case is a close one, but I conclude that Davidson has met its burden of demonstrating Berhorst's expertise on the limited issue of assessing roof and water damage. Berhorst's several-year history in the roofing and general contracting industry coupled with his experience in assessing roof and/or water damage on more than 1000 insurance claims gives him specialized knowledge and skill that provides sufficient basis to provide expert testimony on the damage issue. *See*, *e.g.*, *Gannon Int'l, Ltd. v. Lexington Ins. Co.*, No. 4:07-CV-31 CAS, 2008 WL 3244025, at *9 (E.D. Mo. Aug. 6, 2008). Because an expert may be qualified by his knowledge, skill, or experience, Berhorst's lack of a professional license or certification is not disqualifying. *See id.*; Fed. R. Evid. 702. His admitted lack of expertise in

- 12 -

constructing mod-bit roofs, such as Davidson's roof here, is likewise not disqualifying. "[A]n expert need not have experience with the particular product at issue to be qualified. Appropriate . . . background and experience in a particular field can be sufficient to qualify the expert." *Stone & Alter Real Est. Co. v. Hobart Corp.*, No. 4:01CV1582 MLM, 2003 WL 25694932, at *3 (E.D. Mo. Mar. 18, 2003).

Although Davidson has met its burden to show Berhorst is qualified, I cannot find that it met its burden of establishing by a preponderance of the evidence that Berhorst's opinions are reliable, that is, that they have a sufficient factual basis and that he reliably applied an accepted methodology in reaching his conclusions. Because those questions go to the admissibility and not the weight of Berhorst's opinions, they are for me to resolve instead of a jury. *See* Fed. R. Evid. 702 advisory committee's note (1) to 2023 amendment.

1.   *Roof Damage*

In determining whether and to what extent a roof is damaged, Berhorst testified that he considers the age of the roof and whether there have been any events affecting a roof's integrity, such as weather, excessive walking, construction activity, and roof modifications. He looks for cracking, indentations, open seams, and/or granule loss as evidence of damage. (ECF 53-2, Berhorst Dep. at pp. 63, 82-83, 105-06.) Berhorst testified that he looks for evidence of damage with his eyes, and he can feel structural issues with his feet when walking on mod-bit roofs,

such as when water has ponded underneath the roof membrane.   (*Id.* at pp. 110-11.)

Berhorst first observed the Davidson roof in December 2020, and he conducted initial inspections of the roof in January and February 2021.   Berhorst testified that the only thing he saw at that time was granule loss.   He "didn't see anything else" on the surface of the roof.   (ECF 53-2, Dep. at p. 119.)   During later visits to the roof,[5] he did not see any ponding.   He did not recall seeing any unadhered seams, but he saw some alligatoring.   (*Id.* at pp. 122-26.)[6]   Berhorst testified that he also saw splatter marks on the air conditioning unit, gas piping, and other metal material on the roof, indicating strikes of half-inch to two-inch hail.   He admitted, however, to not knowing how to "grade" splatter marks or determine their age.   Berhorst testified that he also saw dents and exposed fiberglass in the roofing material.   (*Id.* at pp. 172, 183, 186, 266.)   He testified that the granule loss was significant and widespread with some areas of the Davidson roof having 50% granular loss, which indicated a serious event.   (*Id.* at pp. 175, 188.)

The transcript of Berhorst's deposition casts significant doubt on the reliability of his expert opinion testimony regarding the cause of damage to Davidson's roof.   Berhorst testified that water penetrated through fractures in the

---

[5] Although he wrote in his report that he inspected the roof and interior damage more than 20 times, he testified that most of his visits to the roof were not for inspections.   (ECF 53-2, Dep. at pp. 120-21.)

[6] According to Berhorst, "alligatoring" is the blistering and cracking of the surface of a roof's asphalt layer caused by sun exposure and is a sign of an aging roof.   (ECF 53-2, Dep. at pp. 108-09, 112-14.)

roof membrane, but he acknowledged that he did not look for fractures during his inspections.   His reason for concluding that there were fractures in the roof membrane was that there was interior water damage.   (ECF 53-2, Dep. at pp. 137-40.)   He took core samples of the roof but only to determine what kind of roof system was used and how much insulation was present.   (*Id.* at p. 243.)   Roof samples were taken by other inspectors to test for fracturing and water penetration, but Berhorst disagreed with the results of those tests and questioned both the quality and quantity of the samples, without testing any samples himself.

In addition, while Berhorst testified that the age of the roof is significant in determining the existence and extent of damage, he did not know the age of the Davidson roof nor did he research its age.   He testified to his assumption that it was 20 years old, but later guessed it was 10 years old.   (ECF 53-2, Dep. at pp. 91, 96-97, 115.)   He also testified that the roof was well constructed and in good shape, but he had no experience in constructing mod-bit roofs and did not know how Davidson's roof was constructed.   Indeed, Berhorst admitted that he had no expertise in mod-bit roofs.   (*Id.* at pp. 88, 94-95, 99, 115.)

Moreover, Berhorst testified that he did not know the condition of the Davidson roof as it existed before the March 27, 2020, storm.   He testified that he saw no pictures nor recalled any reports,[7] and that his knowledge as to the roof's

---

[7]  In his expert report written less than three weeks before his deposition, Berhorst stated that he reviewed a roofing report dated May 2014.   (ECF 53-3, Berhorst Rep. at p. 2.)

condition prior to March 27, 2020, was based on only what Paul Davidson told him. (ECF 53-2, Dep. at pp. 233-34.)   Regarding whether previous hailstorms could have caused damage to the roof, Berhorst testified that such storms were irrelevant because he was concerned with only the March 2020 storm.   (*Id.* at pp. 242-43.)

As to his opinion that it was the two-inch hail from the March 27, 2020, storm that damaged the roof, Berhorst testified that he looked at Amaya's records to determine the date of the storm.   He testified that Amaya uses a number of weather reporting services provided by its vendors, but he could not recall what services he used to determine the date of the storm.   He also testified that Amaya keeps no records of weather reports and that no such records were in the file.   He also testified that weather reports that showed information differing from two-inch hail at the site were not relevant to his consideration.   He performed no research to determine whether the building had been struck by hail before March 27, 2020, as it did not matter to him whether other hail events had occurred at the site before then. (ECF 53-2, Dep. at pp. 229-33, 242-43.)

Berhorst testified that he inspects roofs visually and by walking on them. There is no indication that he did anything differently here.   While an expert's method of analysis based on visual or tactile inspection can be reliable, *see Hannan v. Auto-Owners Ins. Co.*, No. 2:13CV53 ERW, 2014 WL 3701031, at *10 (E.D. Mo. July 25, 2014), I cannot find on the record here that, regardless of his method, Berhorst's opinions as to the cause of roof damage are based upon sufficient facts or

data.   He conducted no tests and disagreed with test results obtained by other inspectors, stating that the results were invalid because the fact of interior water damage itself showed roof damage.   He testified to certain factors that must be considered in evaluating roof damage, including the roof's age and prior weather events, but he acknowledged that he did not take those factors into consideration when rendering his opinion here, either by not researching relevant and available information or by deliberately ignoring it.   Because this runs counter to his own described methodology in evaluating roof damage, I cannot find that he reliably applied his methodology to the facts.   I will therefore exclude Berhorst's expert opinions and testimony as to the cause of the roof damage at issue in this action.

Berhorst may testify as a fact witness, however, as to what he observed during his examinations of the roof, including granule loss and splatter marks.   And he may give lay opinion testimony under Federal Rule of Evidence 701 that, through personal knowledge and business experience, what he saw appeared to be consistent with hail damage.   *See United States v. Williams*, 41 F.4th 979, 984 (8th Cir. 2022) ("Personal knowledge or perceptions based on experience is sufficient foundation for lay testimony."); *US Salt, Inc. v. Broken Arrow, Inc.*, 563 F.3d 687, 690 (8th Cir. 2009) (witness may provide lay opinion testimony about facts within his "range of generalized knowledge, experience, and perception. . . . [P]erceptions based on industry experience, is a sufficient foundation for lay opinion testimony.") (internal quotation marks and citations omitted).   But, for the reasons set out above, he

cannot testify to his opinion regarding the size of hail involved, that hail in fact caused the damage he observed, or when the damage occurred.   Those opinions cross over to the realm of expert testimony under Rule 702 and are excluded as unreliable.

Nor can I find that Davidson has proved by a preponderance of the evidence that Berhorst's expert opinion regarding the measure of damages is reliable. Berhorst testified that his company, Amaya, made significant repairs to the roof and removed MEP systems, piping, and other appurtenances from the roof that Davidson no longer needed because of interior renovations.   (ECF 53-2, Dep. at pp. 193-94.) Berhorst did not himself do any repair work on the roof and could not testify to the exact work that was done and when.   (*Id.* at pp. 195-97.)   Berhorst testified that the work Amaya performed to repair the roof was all that was required to stop the roof from leaking and that, to his knowledge, the roof had not leaked since the repairs. (*Id.* at pp. 220-21.)   Amaya submitted six invoices to Davidson for the work, but the invoices do not contain any description of the work done and Amaya has no records of the work performed.   (*Id.* at pp. 194-95.)   As to the cost of roof replacement, Berhorst testified that Amaya uses national standards when determining square-foot pricing (ECF 53-2, Dep. at p. 118), but he did not report or testify to what those standards are.[8]   As with his causation opinion, Berhorst provides insufficient facts

---

[8] Notably, Berhorst opined that the Davidson roof needed to be replaced with a TPO roof, which is the type of roof Amaya specializes in.   (ECF 53-2, Dep. at pp. 18, 86-87, 89, 117-18.)

and data upon which to render an expert opinion that the roof damage here amounted to $6,753,600.   To the extent such opinion is proffered as expert opinion, it will be excluded.

2.   *Interior Water Damage*

Berhorst testified that water penetrates a mod-bit roof through cracks in the roof membranes or seams, unadhered seams, and improperly installed drains.   (ECF 53-2, Dep. at pp. 128-29.)   He testified that while hail strikes to a membrane do not directly cause water to come through the roof, they can fracture the membrane, which affects the insulation and causes the roof to deteriorate faster, possibly leading to water damage later on.   (*Id*. at pp. 130-33.)   As to analyzing the interior damage here, Berhorst testified that he was "focused more on the roof versus the water penetration" because the insurance policy, as he read it, was for roof damage and not water penetration.   (*Id*. at pp. 137-38.)

Berhorst opined that the Davidson roof leaked primarily through the seams as evidenced by the cracks in the seams he observed during repair (ECF 53-2, Dep. at pp. 132, 141, 192), but he also opined that water penetrated through fractures in the membranes.   He acknowledged that he did not look for fractures in the roof, conducted no testing, and that testing performed by others showed no fractures; but he felt that not enough of the roof was tested and, further, that there was no evidence

that fractured membranes were *not* part of the issue.   (*Id.* at pp. 137-39, 142.)[9]

Berhorst testified that he could not opine as to how many roof samples would be

enough to determine the cause of water penetration into the building because he is

not an engineering expert.   (*Id*. at p. 163.)

Berhorst testified that in December 2020 he observed water damage to the

ceiling, walls, and carpet throughout the building and that there was damage in every

hundred-foot-quadrant of the building.   (ECF 53-2, Dep. at p. 212.)   He could not

estimate as to when the damage occurred.   (*Id*. at pp. 214-15.)   He testified that he

called Paul Davidson at that time and told him there was a problem with the roof.

In January or February 2021, he suggested to Paul that he file an insurance claim

because of the significant problem with the roof.   (*Id.* at pp. 218-19.)   Berhorst is

not aware of any work done to repair the interior of the building.   (*Id*. at p. 221.)

He testified that he negotiated with Zurich for weeks to reach an agreement that the

scope of loss to the interior of the building was $3.2 million.   (ECF 53-2, Dep. at pp.

254-55.)

Berhorst's opinion testimony regarding the cause of the interior damage to the

building is unreliable and therefore inadmissible as expert opinion evidence.   His

---

[9] The roof samples were tested by an outside company, Vertex.   According to Berhorst, he identified roof areas that had hail strikes, and Vertex directed that those areas be cut out and removed for testing.   (ECF 53-2, Dep. at p. 158.)   Berhorst also testified, however, that he had no input at all as to where to take samples from.   (*Id.* at pp. 157-58, 159-60.)   Regardless, Berhorst testified that instead of Vertex taking the samples at that time, Berhorst loaded them in his truck and delivered them to Vertex a week later, who then transported them to an outside lab.   (*Id*. at pp. 144-46, 154-58.)   Additional roof samples were taken during a later inspection with Dr. Gonzalez.   (*Id.* at pp. 154-55.)

purported methodology for reaching his conclusion comprises observing no broken water pipes or water infiltration from MEP systems, observing cracks in the roof seams, and there being no evidence that fractured roof membranes were not part of the problem.   Berhorst admits, however, that his inspections did not focus on the interior of the building, and he could not estimate when the interior damage occurred.   He also admits that he did not test for water penetration and indeed did not know what level of testing would be appropriate because he is not an engineering expert.   On this evidence, I cannot say that Davidson has demonstrated by a preponderance of the evidence that sufficient facts or data support Berhorst's opinion that hail damage to the roof from the March 2020 storm caused the interior water damage.   His opinions are therefore unreliable and will be excluded to the extent they are proffered as expert opinion evidence under Rule 702.   Berhorst may testify to his observations of interior damage, however, as a fact witness.

Nor can I say that Berhorst's expert opinion regarding the monetary value of interior damage is reliable.   Other than his negotiating with Zurich and agreeing to a $3.2 valuation of loss for insurance purposes, there are no proffered facts, data, or other evidence before the Court showing how the extent of loss was measured or valued.   Nor does the evidence show any methodology by which Berhorst reached a conclusion as an expert that the interior damage was valued at $3.2 million.   While Berhorst can testify as a fact witness to his communications with Zurich regarding their negotiations, he cannot testify as an expert to the monetary value of damage to

the interior of the building.

3.    *Conduct of Zurich Agents*

Finally, to the extent Berhorst opines that "Zurich acted vexatiously, unreasonably and in bad faith in the handling and denial of Davidson's insurance claim," he admits that he has no expertise as to what constitutes vexatiousness, unreasonableness, and/or bad faith in the insurance industry; nor is he an expert in how insurance companies manage claims.   (ECF 53-2, Dep. at pp. 247-50, 252-53.) Moreover, these legal terms of art have a distinct meaning under Missouri law, and specifically Missouri's vexatious-refusal-to-pay statutes, which are invoked in this action.   Because a purported expert may not intrude on the Court's role to instruct the jury as to the law and testify to a legal conclusion, *see Southern Pine Helicopters, Inc. v. Phoenix Aviation Managers, Inc.*, 320 F.3d 838, 841 (8th Cir. 2003); *Certain Underwriters at Lloyd's v. SSDD, LLC*, No. 4:13-CV-193 CAS, 2014 WL 3097284, at *6 (E.D. Mo. July 7, 2014), I will not permit Berhorst to testify as an expert concerning whether Zurich's conduct was vexatious under Missouri law.   He may testify as a fact witness as to his interactions with Zurich and its agents on Davidson's claim.

For the reasons set out above, I will grant Zurich's motion to exclude the reports, testimony, and opinions of Jerry Berhorst to the extent Davidson proffers them as expert opinion evidence under Rule 702.   Berhorst may testify as a fact witness, however, to his observations of the roof and interior of the building as well

as his interactions with Zurich.   He may also offer lay opinion testimony that the condition of the roof as he observed it was consistent with hail damage based on his personal knowledge and business experience.

C.    <u>Motion to Exclude Dr. Ildefonso Gonzalez</u> (ECF 54)

Dr. Gonzalez is a licensed engineer with a bachelor's degree in Civil Engineering, a master's degree in Mechanical Engineering, and a doctorate in Engineering Management.   He is a member of several professional engineering societies and a consultant on matters involving several areas, including forensic engineering and construction.

Davidson secured Dr. Gonzalez's expert report and testimony in this case to provide opinions regarding

> the existence, cause and nature of any roof damage and/or interior water damage with a focus on discussion pertaining to the engineering integrity, quality and nature of the construction and subsequent maintenance, servicing and condition of the building structure, roofing system, materials, and roof and interior conditions and damages under consideration.

(ECF 55-1, Gonzalez Rep. at pt. 4.)   To render his opinions, Dr. Gonzalez reviewed engineering codes and standards; maps, appraisals, and damage reports relating to the Davidson roof and building; weather reports; several photographs; the insurance policy at issue; communications between the parties; and opinions rendered by Berhorst and Dr. Fox, as well as by experts secured by Zurich.   Dr. Gonzalez also interviewed the building's owners and maintenance man, the real estate agent

involved in selling the building, and Jerry Berhorst.   He conducted inspections of the roof and interior of the building on several occasions from March through June 2023.

In his report dated June 30, 2023, Dr. Gonzalez renders twenty separate opinions, but they can be grouped into the following categories:

1)   That the storm that occurred on March 27, 2020, produced two-inch hail;

2)   That the two-inch hail from the March 27, 2020, storm struck and directly caused damage to the Davidson roof, resulting in water infiltration that damaged the interior of the building;

3)   That the roof damage and water infiltration was not caused by any other event or condition, such as a previous hailstorm, workmanship, defects, normal wear and tear, maintenance, and servicing;

4)   That the roof damage and water infiltration was not caused by a preventable or accumulating cause; and

5)   That Zurich's testing to determine and evaluate water penetration was invalid.

(ECF 55-1, Rep. at pt. 9.H.)   In a supplemental report dated August 1, 2023, Dr. Gonzalez reviewed recently obtained results from water-vapor-transmission tests that were performed on samples taken from the Davidson roof.   From those results, Dr. Gonzalez opined that the March 27, 2020, hailstorm and the damage it caused to the roof allowed water to permeate Davidson's mod-bit roof as well as its built-up roofing system.   (ECF 55-2, Gonzalez Suppl. Rep.)

Zurich seeks to exclude Dr. Gonzalez's opinions on three bases.   First, Zurich argues that Dr. Gonzalez is not qualified to render an opinion on the character

of the March 27, 2020, storm – including that it produced two-inch hail that struck the building – because he is not a meteorologist.   Zurich next argues that Dr. Gonzalez's opinions ruling out other causes of water intrusion into the building are unreliable because he based those opinions on only his experience and expertise and not on any identified methodology.   Finally, Zurich contends that Dr. Gonzalez's supplemental opinion is based on a water-vapor lab report that he does not understand and cannot interpret, and that he therefore lacks expertise to render an opinion that is based on that report.

I agree with Zurich that Dr. Gonzalez lacks the meteorological expertise to render an expert opinion as to how hail is formed; whether the March 27, 2020, storm was capable of producing and, in fact, produced two-inch hail; and whether two-inch hail from the March 27, 2020, storm in fact struck the Davidson roof.   Dr. Gonzalez admitted that he is not a meteorologist nor an expert in meteorology, and that his opinions were derived from Dr. Fox's report.   An expert is not qualified under Rule 702 where he has had no relevant training or education specific to the field, has little if any experience in the field, and has not served as any type of expert in the field.   *Dunne v. Resource Converting, LLC*, No. 4:16 CV 1351 DDN, 2022 WL 2132449, at *18 (E.D. Mo. June 14, 2022).   Moreover, while an expert may extrapolate from data supplied by other experts, he does not become an expert simply by reviewing an expert's reports or research.   *Id.* at *17 (quoting *Larson v. Kempker*, 414 F.3d 936, 941 (8th Cir. 1995)).   I will therefore exclude Dr.

Gonzalez's testimony to the extent he provides meteorological opinions as to the nature, character, and hail-producing capability of the March 27, 2020, storm.   The exclusion of those opinions, however, does not affect his opinion as a professional engineer that damage to the roof was consistent with being struck by two-inch hail.

As to Dr. Gonzalez's methodology used to exclude other potential causes of water intrusion, I disagree with Zurich's characterization that Dr. Gonzalez failed to explain both his methodology and its application to the facts of the case and instead relied on only his education and experience in rendering his opinions.   "Where opinion evidence . . . is connected to existing data only by the *ipse dixit* of the expert," I may conclude that "there is simply too great an analytical gap between the data and the opinion proffered."   *Pro Serv. Auto., L.L.C. v. Lenan Corp.*, 469 F.3d 1210, 1216 (8th Cir. 2010) (internal quotation marks and citations omitted).   *See also Presley v. Lakewood Eng'g & Mfg. Co.*, 553 F.3d 638, 646 (8th Cir. 2009) ("[O]pinions formulated merely upon general observations of the evidence and general scientific principles [are] unreliable.") (citing *Pro Serv. Auto.*, 469 F.3d at 1215-16; *Weisgram v. Marley Co.*, 169 F.3d 514, 519 (8th Cir. 1999)).   In this case, however, although Dr. Gonzalez invoked his education and years of experience to support his opinions, he also explained his methodology of, *inter alia*, 1) conducting a microscopic inspection of the roof; 2) examining the locations of the interior damage to determine if they correlated with the locations of the issues seen on the roof; 3) comparing the condition of the roof as he observed in 2023 with the

condition as depicted in reports, photographs, and interviews from 2021; and 4) being onsite during rain events to observe whether leaking occurred through the weaknesses in the roof that he observed. (*See* ECF 55-3, Gonzalez Dep. at pp. 256-87.)

Dr. Gonzalez testified that his inspections of the roof in 2023 showed various issues relating to natural wear and tear, such as loose granules, blistering, ridging and buckling, and alligatoring. Dr. Gonzalez testified that, based on his methodology, he determined that none of the wear-and-tear issues were significant enough at the time of his inspections in 2023 to result in a level of water penetration that would cause the extensive water damage to the interior of the Davidson building. He opined that if those issues were not of such degree in 2023, they could not have been of such degree or worse two years earlier in 2021 (when the other inspections and reports were made) or three years earlier in 2020 (when the hailstorm occurred) and that, therefore, natural wear and tear of the roof could not have been the cause of the interior damage that occurred in 2020. (ECF 55-3, Dep. at pp. 256-87.)

Dr. Gonzalez also testified that his inspections, interviews, and review of reports and photographs showed other issues with the roof – such as evidence of ponding, flashing failures, protruding fasteners, and defective lap seams – and that several of those issues had been addressed and repaired before his inspections in 2023. Dr. Gonzalez opined, however, that while water penetration can occur

generally with such issues, the reports made and photographs taken before repair and nearer in time to the March 2020 storm showed that those issues were not of such degree at that time to be able to cause the interior water damage that occurred here. He therefore ruled out those issues as a cause of the interior damage.   (ECF 55-3, Dep. at pp. 265-87.)

Upon review of Dr. Gonzalez's report and the entirety of his deposition testimony, it appears that Zurich merely disagrees with the methodology Dr. Gonzalez used to exclude other causes of water damage to the interior of Davidson's building.   Such disagreement is an insufficient basis to exclude the opinion and is more properly raised through cross-examination.   *David E. Watson*, 668 F.3d at 1015.   Davidson has demonstrated by a preponderance of the evidence that Dr. Gonzalez has a sufficient basis for his opinion and that he reliably applied his methodology to the facts of the case.   I will permit him to testify to his expert opinion regarding the exclusion of other potential causes of water intrusion to the building.

Finally, Dr. Gonzalez does not render a new opinion in his supplemental report.   He continues to opine that hail damage caused water to permeate the Davidson roof, and he refers to the water-vapor lab report as additional support for that opinion.   As demonstrated above, the lab report is not the exclusive basis for Dr. Gonzalez's opinion.   Zurich's argument that Dr. Gonzalez does not understand the testing or the report sufficiently enough to use it to support his opinion is more

appropriately addressed through cross-examination.   I will not exclude Dr.
Gonzalez's expert opinions expressed in his supplemental report.

I will therefore grant in part and deny in part Zurich's motion to exclude Dr.
Gonzalez's expert report, opinions, and testimony in accordance with my
determinations set out above.

Accordingly,

**IT IS HEREBY ORDERED** that defendant Zurich American Insurance
Company's Motion to Exclude the Reports, Testimony, and Opinions of Jerry
Berhorst [52] is **GRANTED.**   Mr. Berhorst is not permitted to testify as an expert
witness under Federal Rule of Evidence 702 in this action, but he may testify as a
fact witness and is permitted to give lay opinion testimony under Rule 701 that,
through personal knowledge and business experience, he observed the condition of
the Davidson roof to be consistent with hail damage.

**IT IS FURTHER ORDERED** that defendant Zurich American Insurance
Company's Motions to Exclude the Reports, Testimony, and Opinions of Dr. Neil
Fox [50] and of Dr. Ildefonso Gonzalez [54] are **GRANTED in part and DENIED
in part**, as set out in this Memorandum and Order.

_____
CATHERINE D. PERRY
UNITED STATES DISTRICT JUDGE

Dated this 18th day of April, 2024.